UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| RALPH BRADDICK, )<br>)<br>Petitioner )<br>)<br>v. )<br>)<br>MARTIN MAGNUSSON, )<br>COMMISSIONER, MAINE )<br>DEPARTMENT OF CORRECTIONS, )<br>)<br>Respondent ) | Civil No. 05-58-B-W |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Ralph Braddick is serving a sentence imposed by the State if Maine after he was found guilty by a jury for one count of visual sexual aggression against a minor for conduct in Winslow, Maine, and one count of visual sexual aggression against a minor and one count of unlawful sexual contact for conduct in Augusta, Maine. The victim, who was in fourth grade at the time of the abuse, was the daughter of Braddick's then-girlfriend. Braddick filed an unsuccessful direct appeal of his conviction and an equally unavailing petition for state post-conviction relief. He now brings two ineffective assistance claims to the federal forum in this 28 U.S.C. § 2254 petition.[1] For the reasons explained below, I recommend that the Court **DENY** Braddick habeas relief.

---

[1] Braddick posits a third ground in his 28 U.S.C. § 2254 petition which is a challenge to the state post-conviction court's application of the Sixth Amendment standard for ineffective assistance of counsel, describing it as legally incorrect. Braddick contends that the standard Maine version of an ineffective assistance of counsel analysis - the "ordinary fallible attorney" standard articulated in State v. Brewer, 1997 ME 177, ¶¶ 19-20, 699 A.2d 1139, 1144-45 places a lower base-line expectation on counsel than does the United States Supreme Court's Strickland v. Washington, 466 U.S. 668 (1984). This contention must be addressed to resolve the present petition vis-à-vis the first two grounds, but it is not an independent ground for relief.

*Discussion*

*Summary of Grounds*

In his state post-conviction petition Braddick claimed that his trial counsel delivered ineffective assistance of counsel in not compiling and properly presenting to the jury records concerning Braddick's commercial piloting employment record, such as flight logs. Braddick contends that these records would have provided a solid alibi for Braddick during the timeframe that the Augusta-based abuse allegedly occurred according to the victim. In an interconnected ground, Braddick also argued in the state proceedings that his trial attorney was ineffective because he did not object to the prosecutor's failure to produce a bill of particulars that conformed to the court's oral order, which would have narrowed the alibi period from May 6, 1997, through June 17, 1997, and September 1997. The negative implications of dropping this bill-of-particulars ball, Braddick contends, were compounded by defense counsel when on the eve of trial defense counsel filed an unsolicited notice of alibi that opened up the alibi stretch to a year-long period between January 1, 1997, through December 31, 1997. Here in the federal forum, Braddick resurrects these two ineffective assistance grounds.[2] As was the case in the state post-conviction proceedings, Braddick does not mount a challenge that would undermine his conviction on the Winslow-based visual sexual aggression count.

***Parameters of 28 U.S.C. § 2254 Review of Braddick's Ineffective Assistance of Counsel Claims***

In its answer to the petition the State of Maine concedes that the 28 U.S.C. § 2254 petition is timely filed, see 28 U.S.C. § 2244(d)(1), and that Braddick adequately presented the two federal ineffective assistance claims to the state post-conviction court

---

[2] Braddick had two other grounds in his petition for post-conviction review which he does not raise in his 28 U.S.C. § 2254 petition.

2

and the Maine Law Court in an application to appeal the denial of post-conviction relief, see 28 U.S.C. § 2254(b)(1)(A); compare O'Sullivan V. Boerckel, 526 U.S. 838 (1999).

There is no dispute betwixt the parties that the inquiry for purposes of Braddick's § 2254 petition must focus in on this federal court's 28 U.S.C. § 2254(d) review of the state courts' adjudication of Braddick's ineffective assistance of counsel claims. Subsection (d) of § 2254 provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The First Circuit has discussed these review standards in the context of the Sixth Amendment inquiry for ineffective assistance of counsel, relying on the Supreme Court precedents of Strickland v. Washington, 466 U.S. 668 (1984) and Williams v. Taylor, 529 U.S. 362 (2000):

> To demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, [the § 2254 petitioner] must establish (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); see also Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir.1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
> To prevail on his habeas petition, however, [the § 2254 petitioner] must demonstrate not just that the Strickland standard for ineffective assistance of counsel was met, but also that the [state court's] adjudication of his constitutional claims "resulted in a decision that was contrary to, or

3

> involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result," id. at 406. A state court decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.
>
> The Supreme Court has made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Hurtado v. Tucker, 245 F.3d 7, 15-16 (1st Cir.2001).

Mello v. DiPaulo, 295 F.3d 137, 142 43 (1st Cir. 2002); see also Bell v. Cone, 535 U.S. 685, 694 (2002) (undertaking the § 2254(d)(1)/ Strickland analysis); Stephens v. Hall, 294 F.3d 210, 217-23 (1st Cir. 2002) (same).[3]

This deferential § 2254 review must proceed even when there is little fodder to feast on, see Norton v. Spencer, 351 F.3d 1, 5 -6 (1st Cir. 2003); see also Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003) ("Because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion."), and the state court need not cite or even be aware of the pertinent Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them," Early v. Packer, 537 U.S. 3, 8 (2002).

---

[3] When determining the parameters of "clearly established federal law' in the context of ineffective counsel challenges the inquiry may not stop at the general Strickland test because there are a myriad of alleged infirmities in a criminal proceeding that are the substantive underpinning of an ineffectiveness of counsel claim. See Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002).

And because the post-conviction court held an evidentiary hearing on Braddick's ineffective assistance claims, I must also be mindful of subsection (e) of § 2254, which counsels:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); see also id. § 2254(e)(2).

### *The State Court Adjudication of Braddick's Federal Claims*

In denying Braddick's application for a certificate of probable cause the Maine Law Court stated only, "It is apparent that the appeal does not raise any issue worthy of being full heard." Accordingly, I look to the decision of the state post-conviction court in my § 2254(d) review.

> At trial, the petitioner advanced two basic defenses: (1) a straight denial of the alleged actions, and (2) a partial alibi defense. For purposes of this petition Braddick does not suggest any defense that was overlooked by his trial attorney, but argues that the attorney failed to adequately develop the alibi defense, which affected the fairness of his trial.
> The indictment alleged that the activities that were the subject of counts II and III occurred "between September 11, 1996, and June 1, 1998, on one or more occasions, in Augusta..." As will be discussed below, the trial attorney was concerned about narrowing the timeframe because of the possibility of establishing an alibi defense for the defendant. Although residing in Augusta at the time in question, the defendant was an airline pilot who spent much of his time out-of-state on business. The strategy this presented was to narrow any "window of opportunity" and then show how little time during that window would have been available for the defendant to have been left alone with the victim, in an attempt to at least create a reasonable doubt that the events occurred.

(Decision Post-Conviction Pet. at 3.) In a footnote to this last sentence of this paragraph the court stated:

5

> This was not a classic alibi defense of the type which shows that the defendant had no access to the victim because he was in an entirely different place during the time in question. Rather, the defense had to do with reasonableness and probability of access during the times in question.

(Id. at 3 n.2.)  The court went on:

> Perhaps for the purposes of impressing the jury with the strength of this defense, trial counsel stated that there was an "absolute alibi" for these events (T.T., p. 20), but despite this bold assertion, there were always times not accounted for.
>
> In response to a motion for a bill of particulars, which was granted, the State sent a letter to trial counsel stating, "The discovery you have provided reveals that the allegations contained in counts 2 and 3 of the indictment occurred after your client moved to Augusta, and before Laurel and the children broke off relations with him; the outside dates for those events, and consequently the outside dates for the commission of those offenses, would be between January 1, 1997, and December 31, 1997." Later evidence narrowed the timeframe from sometime in early May to mid to late September, depending upon which version of the "break up" date is accepted.  There were indications from the discovery (Det. Moinster's report – State's Exhibit [] 6, pp. 2-3) that suggested the activity might have occurred while school was in session.  According to the trial attorney's testimony, he was faced with a decision of how to limit the window or windows of opportunity for purposes of the alibi defense. Knowing that he could not close the window with regard to July and August of that year and with the indications from the Moinster report that the activities had occurred during the school year but close to the victim's birthday in September, the attorney made the tactical decision to focus on September as the target for the alibi. Such a decision is within the performance of an ordinary fallible attorney.
>
> The petitioner argues that his trial attorney was ineffective in developing the alibi defense by failing to adequately investigate and present alibi information for May and June as well as September of 1997. To illustrate the point, the petitioner has developed a colorful graphic calendar display of his whereabouts during the months of May, June and September using not only petitioner's flight logs and schedules, but also receipts and other information newly developed.  Even so, the new argument would have faced the same problem as the trial argument in the face of the testimony of the witness. On direct examination, the victim testified with regard to counts II and III that by May 8, 1997, she had moved from Winslow to Augusta with her mother and was back at Farrington School (T.T., p.40).  She also testified that there were times when she went to the defendant's apartment (T.T., pp. 44-45) after school and let herself in to do homework or watch television.  When asked about

6

the specific time for the incidents alleged on direct examination, the following took place:

> Q: And at some point you say you were in the kitchen or living room. Is that where you stayed or did you go somewhere else?
> A: I had a homework question. I knocked on Ralph's door where he was in his bedroom and he told me I could come in. I went in and I was a little shocked at what I had seen. And –
> Q: You said you had a homework question?
> A: Yes.
> Q: Do you know whether that was school work or an assignment he had given you?
> A: I don't know which one it was.
> Q: Do you know – we know you were in school; at Farrington by May. Do you know what month this was, whether it was May or June or July, August, September, do you know?
> A: No.

On cross-examination, the victim was asked about the date of the incident and her previous testimony that the defendant had given her money after the events, as follows:

> Q: You said it twice in your report that you were doing homework.
> A: Yes.
> Q: Does that refresh your recollection that this occurred while you were in school?
> A: No. Because I could have been doing his homework or schoolwork.
> Q: You testified that at the end of this event you were given some small change, right?
> A: Yes.
> Q: And that it was birthday money, right?
> A: I don't know if it was birthday money or early or late birthday money, but I believe it was dealing with birthday money.
> Q: Do you recall telling Det. Moinster that this was birthday money?
> A: Yes.
> Q: That therefore this occurred around you birthday?
> A: It may not have occurred around my birthday; it could have been earlier, sometime in August, July.
> Q: Could it have been as early as June or May?
> A: Exactly.
> Q: You received birthday money three months before your birthday?
> A: No. Not that I recall. But I remember getting birthday money that was early.
> Q: It's your testimony now that maybe this wasn't near your birthday at all, right?

7

> A: I can consider two, three months before my birthday close enough to my birthday.
> Q: You may not have been in school. This may have been homework that Mr. Braddick gave you?
> A: What are you asking me?
> Q: About the homework, you say in your report that may not have been schoolwork that could have been Mr. Braddick's homework?
> A: It could have been. It could have been homework he gave me or school homework. I'm not sure.
> Q: How is your recollection of that second event today? Pretty good?
> A: I don't remember conversations. I remember what happened.

In other words, if the jury believed the testimony of the victim, which obviously they did, the date of the event could have been any time between May and mid-September—too long a period to be susceptible to a credible alibi defense,

> In summary on this issue, the petitioner has demonstrated with the benefit of trial transcript and additional materials that arguably a better job could have been done presenting an alibi defense. However, the defense which was presented at trial was plausible and vigorously argued, and trial counsel's performance did not fall below that of an ordinary fallible attorney. Furthermore, even if the performance had fallen below that standard, the victim's testimony broadening the time period within which the offense could have been committed made it virtually impossible to present a successful alibi defense and any failings by trial counsel would not have denied the petitioner of a defense or a fair trial.

(Id. at 3-7.)

With respect to the failure to hold the prosecutor to a narrower timeframe, the Court explained:

> [T]the petitioner contends that his trial attorney was ineffectual in getting the prosecution to commit to a specific timeframe during which the crime allegedly was committed. In this regard, the trial attorney was successful in pursuing a motion for a bill of particulars. During the hearing on the motion, the District Attorney at one point suggests that the events may have occurred while school was in session. (Motion Hearing Transcript, p.8). However, the subsequent letter confirming the bill of particulars information states, "The discovery you have been provided reveals that the allegations contained in counts 2 and 3 of the indictment occurring after your client moved to Augusta and before Laurel and the children broke off relations with him; the outside dates for those events, and consequently the

outside dates for the commission of those offenses, would be between January 1, 1997, and December 31, 1997." According to his testimony, the trial attorney subsequently discussed the school issue further with the District Attorney, but did not get a formal statement of the State's position in writing. At that point in the process, it appeared likely that the event occurred while school was in session, but that may have been the result of a misinterpretation of the developing evidence by Det. Moinster, as later shown in the trial testimony of the victim herself. The Trial attorney got the prosecution to reduce the time period for the crime significantly through his motion for a bill of particulars and his efforts were at least as effective as those of an ordinary fallible attorney.

At other times during the [post-conviction petition] hearing and argument, the petitioner questioned why the trial attorney filed a notice of alibi with the District Attorney when such notice is not precisely required under the rules. To this the trial attorney responded that it was better practice in his opinion, to file such notice and the court agrees. ....

A leading federal case, cited by approval in Maine is Strickland v. Washington, 466 U.S. 688 ....(1984). After announcing the standard of review the Supreme Court noted,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. ...There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. 466 U.S. at 689.[4]

In summary, the petitioner may have demonstrated that his trial attorney could have done different things which might have improved his presentation to the jury. However, the fact that the performance could have been improved did not deprive the petitioner of any defense or a fair trial. Applying the standards as set forth in [State v.] Brewer, [699 A.2d 1139 (Me. 1997)] while considering the caution stated in Strickland, the

---

[4] Citation was omitted by the post-conviction court. The court also omitted at the point marked by the ellipse: "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy." 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

> court finds that the petitioner has failed to prove that the performance of his trial attorney was less effective than that of an ordinary fallible attorney or, if it was, that such failing denied the petitioner a substantial defense or affected the outcome resulting in an unfair trial.

(Id. at 8-10.)

### *The 28 U.S.C. § 2254/ Strickland Determination*

To a certain extent I can agree with Braddick that the post-conviction court's quotation of Strickland as the "leading federal case, cited by approval in Maine" does not alone support a conclusion that it was, therefore, not contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1). It is true that rather than using the Strickland linguistics and asking whether "counsel's representation fell below an objective standard of reasonableness," the court asked whether counsel's representation fell below that expected of an "ordinary fallible attorney."

Contrary to Braddick's attorney's argument otherwise (see Sec. 2254 Mem. at 7-9), this is not a case that necessitates inquiry into whether or not the "ordinary fallible attorney" standard is a lower benchmark than Strickland's "objective standard of reasonableness" expectation. Compare Henry v. Poole, 409 F.3d 48 (2d Cir. 2005). That is because, apropos both the failure to perfect the alibi defense and the subsidiary concern regarding the approach to the bill of particulars/notice of alibi logistics, the post-conviction court's determination cannot be a basis for 28 U.S.C. § 2254 relief under the second prong of Strickland when viewed through the prism of § 2254(d)(1) or (2) review. The bottom line here, see Packer, 537 U.S. at 8, is that, whatever more defense counsel might have done to shore-up Braddick's alibi defense for May, June, and September

10

1997,[5] the victim's own testimony -- as the post-conviction court noted in regards to both the presentation of the alibi data and the bill of particulars/notice of alibi logistics -- broadened the timeframe in which the Augusta, Maine conduct could have occurred and this key testimony would not have been limited by any bill of particulars filed by the prosecution or the notice of alibi that was submitted by Braddick's counsel.[6]  I would be hard pressed to conclude "that counsel's failures were so serious as to deprive the defendant of a fair trial." Haines v. Risley, __ F.3d __, __ , 2005 WL 1491470, * 2, (1st Cir. June 24, 2005) (citing Strickland).  Whatever its phraseology,[7] I certainly have no reason to conclude that the post-conviction court application of the second Strickland prong was objectively unreasonable. See Rompilla v. Beard, __ U.S. __, __, 125 S. Ct. 2456, __ (June 20, 2005) ("[T]he state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable.") (quoting Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) quoting Williams, 529 U.S. at 409).  Its conclusion was not contrary to Strickland's prejudice prong nor was it an unreasonable application of that prong in view of the facts it confronted, see Williams, 529 U.S. at 413.

---

[5]  Based on the testimony during the post-conviction hearings, the court stated that counsel knew he could not close the alibi window with respect to July and August and that he made a tactical decision to focus on September 1997.  Were I to decide this case on the first prong of Strickland, this factual finding would be accorded the deference mandated by 28 U.S.C. § 2254(d)(2) and (e)(1).

[6]  Indeed, whatever the potential procedural maneuvers that may or may not have been utilized by either side with respect to these pre-trial motions, based on the trial transcripts there is no real dispute that the relevant time for these two contested counts was from early May 1997 through mid to late September 1997.  In his § 2254 pleadings Braddick has failed to convince me that the fact that the bill of particulars and the notice of alibi over-measured this five-month window is at all significant in view of the testimony of the witnesses at trial.

[7]  With regards to the second prong of the United State Supreme Court's ineffective assistance inquiry, the post-conviction court did not use the Strickland semantics of whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," but queried whether Braddick was denied a defense or a fair trial, in language similar to that used by the First Circuit in Haines v. Risley.

*Conclusion*

For the reasons stated above, I recommend that the Court **DENY** Braddick 28 U.S.C. § 2254 relief.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated June 28, 2005.